

**FILED**
April 11, 2025 01:21 PM
ST-2019-CV-00469
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| DAVID HARVEY, ASHLEY ROBINSON BUILDERS, LLC, CORY ALLISON, WESLEY MILLER, BOBBY GRISSOM and ZACHARY WEST, | ) CASE NO. ST-2019-CV-00469 )<br>) ACTION FOR BREACH OF ) CONTRACT, DETRIMENTAL ) RELIANCE, AND ) QUANTUM MERUIT |
| Plaintiffs, | ) |
| -vs- | )<br>) |
| VIRGIN ISLANDS HOUSING FINANCE AUTHORITY, AECOM CARIBE, LLP, LAMAR CONTRACTORS, LLC, and FLATLINE CONCRETE, LLC, | )<br>)<br>)<br>) |
| | ) JURY TRIAL DEMANDED |
| Defendants. | )<br>) |

Cite as: 2025 VI Super 11U

Appearances:

CLIVE C. RIVERS, ESQUIRE
LAW OFFICES OF CLIVE RIVERS
St. Thomas, VI
*For Plaintiffs*

DOUGLAS B. CHANCO, ESQUIRE
Roswell, GA
*For Defendant Lamar Contractors, LLC*

MICHELLE T. MEADE, ESQUIRE
LAW OFFICE OF MICHELLE T. MEADE
St. Thomas, U.S. Virgin Islands
*For Defendant AECOM Caribe, LLP*

SCOT F. MCCHAIN, ESQUIRE
MCCHAIN HAMM & ASSOCIATES, LLP
Christiansted
St. Croix, U.S. Virgin Islands
and

EARNESTA L. TAYLOR, ESQUIRE
BECKSTEDT & KUCZYNSKI, LLP
Christiansted,
St. Croix, U.S. Virgin Islands
*For Defendant Flatline Concrete, LLC*

NYCOLE A. THOMPSON, ESQUIRE
St. Thomas, VI
*For Defendant VIHFA*

## MEMORANDUM OPINION AND ORDER

¶1     Pending before the Court are:

1. Motion to Dismiss Defendant Lamar Contractors, LLC, filed October 29, 2019;

2. Plaintiffs' Opposition to Defendant Lamar Contractors, LLC's Motion to Dismiss, filed November 19, 2019; and

3. Plaintiffs' Opposition to Defendant Lamar Contractors, LLC's Motion to Dismiss, filed November 22, 2019.

For the reasons set forth below, the Court will deny in part and grant in part Defendant Lamar Contractors, LLC's ("Lamar") Motion to Dismiss.

## I.     BACKGROUND.

¶2     After Hurricanes Irma and Maria struck the U.S. Virgin Islands in September 2017, the Defendants allegedly entered into contracts concerning hurricane repair work in the U.S. Virgin Islands. In their First Amended Complaint, Plaintiffs allege that the Sheltering Temporary Essential Power ("STEP") Program Emergency Home Repairs V.I. provided disaster recovery services, and the Virgin Islands Housing Finance Authority ("VIHFA"), an instrumentality of the Government of the Virgin Islands, served as the administrator of the STEP program and surety for all contracts under the STEP program.[1] VIHFA contracted with AECOM (the "prime contract") to be its prime contractor for the STEP program.[2] In February 2018, AECOM contracted with Lamar to participate as an AECOM subcontractor in VIHFA's STEP program, and around July 2018, Lamar subcontracted its construction related obligations relative to its contract with

---

[1] First Am. Compl., ¶¶9–15.
[2] First Am. Compl., ¶¶2–16.

AECOM to Flatline Concrete, LLC ("Flatline") in Subcontract No. 1804-6.[3]

¶3    Subsequently, Flatline "contracted with Plaintiffs Allison, Harvey, Miller, Grissom, and West, respectively, to perform its construction related obligations pursuant to its contract with Lamar to construct and/or repair hurricane damaged houses."[4] Plaintiffs allege that Flatline agreed in each contract to pay a specified amount to each Plaintiff, and that these "contracts ostensibly created a duty of Flatline to tender payment timely upon the complete performance of work by each respective Plaintiff."[5] Plaintiffs allege that they satisfied their contractual service obligations relative to the AECOM prime contract with VIHFA and submitted their work orders and invoices to Defendants after FEMA approved funding to the VIHFA for STEP, but the "Defendants singularly and/or collectively have failed to pay and refused to pay the Plaintiffs."[6]

¶4    In July 2018, Plaintiff Ashley Robinson Builders, LLC ("ARB") entered into an agreement with Lamar to perform some of the work under the AECOM prime contract.[7] But Plaintiffs claim that Lamar breached its duty to ARB when it failed to pay ARB for its construction related services relative to the AECOM prime contract.[8]

¶5    As a result, Plaintiffs' First Amended Complaint consists of Counts against all Defendants for: Count I - Breach of Contract; Count II - Detrimental Reliance; and Count III - Quantum Meruit.

## II.    LEGAL STANDARD.

### A.    Personal Jurisdiction and Virgin Islands Rule of Civil Procedure 12(b)(2).

¶6    Under Virgin Islands Rule of Civil Procedure 12(b)(2), a party may assert as a defense the court's "lack of personal jurisdiction."[9] Specifically,

> "Personal jurisdiction is the authority of a court to exercise jurisdiction over a party before it." The Court's personal jurisdiction over out-of-state parties is governed by V.I. R. Civ. P. 4(f), which permits the Court to exercise personal jurisdiction only to the extent allowed by the Virgin Islands long-arm statute. "A defendant may challenge a court's exercise of personal jurisdiction in a pre-answer motion" under V.I.R. Civ. P. 12(b)(2). "Once a defendant challenges the court's jurisdiction, the burden then shifts to the plaintiff to show that jurisdiction over the defendant is

---

[3] First Am. Compl., ¶¶17–19.
[4] First Am. Compl., ¶20.
[5] First Am. Compl., ¶21.
[6] First Am. Compl., ¶¶23–24.
[7] First Am. Compl., ¶18.
[8] First Am. Compl., ¶25.
[9] V.I.R. Civ. P. 12(b)(2).

proper." In determining whether a litigant is subject to personal jurisdiction, Virgin Islands courts employ a "two part test":

First, the Court evaluates whether the defendant is subject to personal jurisdiction under the Virgin Islands long arm statute, codified at V.I. Code Ann. tit. 5, § 4903. Second, the Court must be satisfied that "the exercise of personal jurisdiction satisfies the requirements of due process."

"The plaintiff bears the ultimate responsibility to prove by a preponderance of the evidence that the trial court may exercise personal jurisdiction over the out-of-state defendant." "However, at the motion to dismiss stage of the litigation, the burden on the plaintiff depends on the actions a trial court takes in disposing of the motion." "[I]f the trial court does not hold an evidentiary hearing to determine the motion to dismiss based on personal jurisdiction, the plaintiff is only required to establish a prima facie case for personal jurisdiction." "Under this standard, it is plaintiff's burden to demonstrate the existence of every fact required to satisfy 'both the forum's long-arm statute and the Due Process Clause of the Constitution.'" In making this prima facie determination, the Superior Court "must accept as true all of plaintiff s factual allegations that are supported by affidavits or other competent evidence which would be admissible at trial and must resolve all factual disputes in the plaintiff's favor."[10]

## B. Venue and Virgin Islands Rule of Civil Procedure 12(b)(3).

¶7     Under Virgin Islands Rule of Civil Procedure 12(b)(3), a party can also challenge a pleading on the basis of "improper venue."[11] The Virgin Islands Code on venue states:

(a) All civil actions shall be initiated in the judicial division where the defendant resides or where the cause of action arose or where the defendant may be served with process. Criminal actions shall be brought in the judicial division in which the alleged criminal offense was committed. Actions of criminal conspiracy may be brought in either division in which any of the alleged overt acts were committed.

(b) For the convenience of parties and witnesses and in the interest of justice, a judge of the Superior Court may, with the approval of the presiding judge of such court, transfer any action or proceeding pending in one judicial division to the other judicial division for hearing and determination.[12]

## C. Virgin Islands Rule of Civil Procedure 12(b)(6).

¶8     Virgin Islands Rule of Civil Procedure 12(b)(6) allows a party to challenge a pleading for

---

[10] *Gov't of United States Virgin Islands v. Takata Corp.*, 67 V.I. 316, 336–37 (V.I. Super. 2017) (citations omitted).
[11] V.I.R. Civ. P. 12(b)(3).
[12] 4 V.I.C. § 78.

"failure to state a claim upon which relief can be granted."[13] To survive a 12(b)(6) motion, the plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief,"[14] and "[t]he facts alleged in the pleadings, and any inferences drawn therefrom must be viewed in the light most favorable to the plaintiff."[15] All material allegations in the complaint are taken as true, and the Court must construe all facts in a light most favorable to the non-moving party.[16] "Even if a complaint is 'vague,' 'inartfully drafted,' 'a bare-bones outline,' or 'not a model of specificity,' the complaint may still be adequate so long as it can reasonably be read as supporting a claim for relief…"[17] The purpose of a motion to dismiss at this stage of litigation "is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."[18] Further, "matters outside of the pleadings should not be considered in deciding a Rule 12(b)(6) motion to dismiss."[19]

¶9    Since Virgin Islands Rule 8(a)(2) explicitly states that the Virgin Islands is a notice pleading jurisdiction, a plaintiff merely needs to give the defendant a basic legal and factual basis for her claim to put the defendant on fair notice of the claim brought against him.[20] In fact, "[t]he complaint need not identify the particular legal theories that will be relied upon, but it must describe the essence of the claim and allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her to relief."[21] This standard is reinforced by the policy that litigants should not be expected to win their cases on the pleadings but rather be given their day in court,[22] and the standard is necessarily a more liberal and forgiving approach that is different from the *Twombly* plausibility standard.[23] Essentially, Rule 8(a)(2) allows the

---

[13] V.I. R. CIV. P. 12(b)(6).

[14] V.I. R. CIV. P. 8(a)(2).

[15] *Adams v. North West Company (International), Inc.*, 63 V.I. 427, 438 (V.I. Super. Ct. 2015) (citing *Benjamin v. AIG Ins. Co. of Puerto Rico*, 56 V.I. 558, 566 (V.I. 2012)).

[16] *L'Henri, Inc. v. Vulcan Materials Co.*, Civ. No. 206-170, 2010 WL 924259, at *1 (D.V.I. Mar. 11, 2010) (citing *Christopher v. Harbury*, 536 U.S. 403, 406 (2002)).

[17] *Basic Servs., Inc. v. Gov't of Virgin Islands*, 2019 VI 21, ¶12 (citing *Casaday v. Allstate Ins. Co.*, 232 P.3d 1075, 1080 (Utah App. 2010)).

[18] General standards for a Rule 12(b)(6) dismissal, 6 Annotated Patent Digest § 39:32.

[19] § 39:35. Matters outside the pleadings, 6 Annotated Patent Digest § 39:35.

[20] *See Bank of Nova Scotia v. Flavius*, Super. Civ. No. SX-16-CV-125, 2018 WL 745958, at *6 (Super. Ct. Feb. 2, 2018).

[21] *Howe v. MMG Ins. Co.*, 2014 ME 78, ¶ 9, 95 A.3d 79, 81-82(internal quotation marks omitted) (citation omitted).

[22] *See Carrillo v. Boise Tire Co.*, 152 Idaho 741, 751, 274 P.3d 1256, 1266 (2012) ("The Idaho Rules of Civil Procedure set forth a system of notice pleading intended to free litigants from what were once rigid pleading requirements.").

[23] *See Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 604-05 (Minn. 2014) ("After all, Minnesota is a notice-pleading state and 'does not require absolute specificity in pleading, but rather requires only information sufficient to fairly notify the opposing party of the claim against it.'"); *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) ("Tennessee follows a liberal notice pleading standard, . . . which recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court."); *McCurry v. Chevy Chase Bank, FSB*, 169 Wash. 2d 96, 101, 233 P.3d 861, 862 (2010)(en banc) ("Under CR 12(b)(6) a plaintiff states a claim upon which relief can be granted if it is *possible* that facts could be established to support the allegations in the complaint.") (emphasis in original).

Court to proceed with the discovery process and address pleadings based on the merits of each asserted claim,[24] and "[p]leadings . . . must be fatally defective before they may be rejected as insufficient."[25] Further, "the purpose of the notice pleading standard is to avoid 'dismissals of cases based on failure to allege specific facts which, if established, plausibly entitle the pleader to relief.'"[26]

## III.  ANALYSIS

¶10    Lamar moves to dismiss Plaintiffs' First Amended Complaint pursuant to Virgin Islands Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). Lamar raises four main arguments: (1) the subcontract between ARB and Lamar contains a Choice of Law and Forum Selection Clause; (2) Plaintiffs have no contractual agreements with Lamar (except for ARB); (3) Plaintiffs cannot sustain a claim for detrimental reliance against Lamar; and (4) Plaintiffs cannot sustain a claim for quantum meruit against Lamar.

### A.  The Subcontract Between ARB and Lamar.

¶11    Lamar and ARB entered into the subcontract on July 30, 2018, concerning construction repair services for the STEP program.[27] In their First Amended Complaint, Plaintiffs argue that, under the terms of the agreement between Lamar and ARB, "Lamar breached its duty to pay ARB for its services relative to AECOM's prime contract with VIHFA and ARB is entitled to damages."[28] However, Lamar argues that the subcontract specifically includes a forum selection clause that requires lawsuits between the Lamar and ARB to be filed in the Parish of St. Charles in Louisiana. In particular, paragraph 47 states:

> The parties agree that this Agreement, and the rights and obligations of the Parties hereto shall be governed by the substantive laws of the State of Louisiana, except for those relating to conflicts of law. The parties also agree that venue and jurisdiction of any lawsuit, right or cause of action arising under, related to or in connection with this Agreement, including any lawsuit or cause of action filed against the surety that provided the payment and performance bond for Lamar Contractor Inc. for the project, shall be filed in the 29th Judicial District Court for the Parish of St. Charles, State of Louisiana, which court shall have exclusive jurisdiction over any lawsuit filed by either party to this subcontract. The parties agree that this provision on venue and jurisdiction shall govern over any conflicting provision on venue and jurisdiction in the contract documents.[29]

---

[24] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("The liberal notice pleading of [Federal] Rule [of Civil Procedure] 8(a) . . . was adopted to focus litigation on the merits of a claim.").

[25] *Corwin v. Brit. Am. Tobacco PLC*, 251 N.C. App. 45, 56, 796 S.E.2d 324, 333 (2016) (citation omitted).

[26] *Basic Servs., Inc.*, ¶10 (citations omitted).

[27] Ex. A, Oct. 29, 2019.

[28] First Am. Compl., ¶¶25–31.

[29] Ex. A, Oct. 29, 2019, ¶47.

¶12    Additionally, Lamar cites precedent from this Court regarding the developed analysis for determining whether to dismiss a claim based on a forum selection clause. This Court outlined the following analysis:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires classification of the clause as mandatory or permissive. A mandatory forum selection clause contains clear language indicating that jurisdiction is appropriate only in a designated forum. A permissive forum selection clause, often described as a consent to jurisdiction clause, authorizes litigation in a designated forum, but does not prohibit litigation elsewhere. The third inquiry asks whether the claims and parties involved in the suit are subject to the forum selection clause.[30]

Lastly, if the forum selection clause was communicated to the party resisting enforcement, is mandatory, and covers the claims and parties in the dispute, there is a rebuttable presumption that the forum selection clause is enforceable.[31] Whether the party has sufficiently rebutted this presumption is the fourth and final prong:

> Consequently, under the fourth prong, the Court must ultimately determine "whether the resisting party has rebutted the presumption of enforceability by showing (1) that the clause is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would, in the particular circumstances of the case, result in jurisdiction so seriously inconvenient as to be unreasonable."[32]

¶13    Lamar claims that all requirements are met. ARB and Lamar are both parties, the clause was reasonably communicated to ARB, the "subcontract contains clear language that Louisiana is the only agreed upon forum," and both parties can bind the other to the clause.[33]

¶14    The Court agrees with Lamar that the signed subcontract between Lamar and ARB contains a forum selection clause. Enforcing the clause is appropriate under both U.S. Virgin Islands law and Louisiana law.[34] The prongs are all met: first, by signing the agreement, ARB was aware of the terms of the subcontract (especially as it was one of the last paragraphs near the signature section); second, the mandatory clause made clear that jurisdiction is only appropriate in Parish of St. Charles, Louisiana (the designed forum); third, ARB and Lamar are both subject to the clause and ARB's claims against Lamar are all related to the same unpaid services subject to the clause;

---

[30] *Bluewater Constr., Inc. v. CBI Acquisitions, LLC*, 70 V.I. 586, 597, 2019 VI SUPER 70, ¶ 4 (V.I. Super. 2019) (quoting *Philo v. Armstrong Service, Inc.*, Case No. ST-16-CV-685, 2017 WL 2294638, at *1 (V.I. Super. Ct. May 22, 1017)) (citations, quotation marks, and brackets omitted).

[31] *Id.* at 598 (citations omitted).

[32] *Id.*

[33] Mem. Fact Law Supp. Def. Lamar Contractors, LLC's Mot. Dismiss, 10.

[34] *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of Louisiana*, 2013-1977 (La. 7/1/14), 148 So. 3d 871, 878 ("After considering the law, briefs and arguments of the parties, we now hold that forum selection clauses are generally enforceable and are not per se violative of public policy in Louisiana.").

and fourth, ARB has not sufficiently rebutted the presumption of enforceability. ARB does not directly address the forum selection clause in the opposition to Lamar's Motion to Dismiss. Pursuant to Rule 12(b)(3) of the V.I. Rules of Civil Procedure, Lamar's Motion to Dismiss will be granted with respect to claims raised by Plaintiff ARB against Lamar.

## B. Claims of Remaining Plaintiffs against Lamar.

### 1. Breach of Contract Claim.

¶15    In their First Amended Complaint, Plaintiffs allege that Flatline had a duty to pay Plaintiffs, but Flatline "breached its duty" when "it failed to pay Plaintiffs Allison, Harvey, Miller, Grissom, and West for their services relative to AECOM's prime contract with VIHFA."[35] "The Plaintiffs' satisfactory completion of their contractual agreements with Lamar and Flatline created an affirmative duty of the surety VIHFA to ensure that Plaintiffs who held construction-related contracts under AECOM's prime contract with VIHFA were paid."[36] Plaintiffs bring the present breach of contract claim against the Defendants jointly and severally, including Lamar.

¶16    In its Motion to Dismiss, Lamar states that for a breach of contract claim, the Plaintiffs must show four elements: "(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages."[37] But Lamar argues that, with the exception of ARB, "[n]o contractual relationship exists" between Lamar and the Plaintiffs, and the Plaintiffs failed to satisfy the first prong.[38] Lamar argues that Plaintiffs entered into contracts with Flatline Concrete, LLC but not Lamar, and Lamar is therefore not the right party to bring this claim against.

¶17    Plaintiffs concede that no written contracts exist between Lamar and Plaintiffs, with the exception of ARB.[39] However, they argue that they "were employees" of Flatline under Flatline's contract (Subcontract 1804-6) with Lamar.[40] Due to this employment, they "held an inferred-agreement" with Lamar "evidenced by Plaintiffs' completion of work orders issued under Subcontract 1804-6."[41] Plaintiffs allege that Lamar's acceptance of Plaintiffs' work orders through Flatline "created a duty" of Lamar to compensate the Plaintiffs for their services, and Lamar has breached this duty.[42] Furthermore, Plaintiffs claim that they are third-party beneficiaries of Subcontract 1804-6 and have a contractual right to payment from Lamar.[43] Plaintiffs argue that payment from Lamar was the requested performance, and Lamar's conduct of accepting work

---

[35] First Am. Compl., ¶34.
[36] First Am. Compl., ¶36.
[37] *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 134–35 (2009) (citations and quotations omitted).
[38] Mem. Fact Law Supp. Def. Lamar Contractors, LLC's Mot. Dismiss, filed Oct. 29, 2019, 7.
[39] Pls.' Opp'n Def. Lamar Contractors, LLC's Mot. Dismiss, 8.
[40] Pls.' Opp'n Def. Lamar Contractors, LLC's Mot. Dismiss, 8.
[41] Pls.' Opp'n Def. Lamar Contractors, LLC's Mot. Dismiss, 8–9.
[42] Pls.' Opp'n Def. Lamar Contractors, LLC's Mot. Dismiss, 9.
[43] Pls.' Opp'n Def. Lamar Contractors, LLC's Mot. Dismiss, 9.

orders completed by Plaintiffs establishes Lamar's intent to pay the Plaintiffs.

¶18    Lamar incorrectly relies upon *Twombly* as the 12(b)(6) standard even though the Virgin Islands is a notice pleading jurisdiction.[44] After viewing the facts in a light most favorable to the non-moving party, the Court finds that Plaintiffs have sufficiently stated a claim of breach of contract and have put Lamar on notice of their claim. The claim for breach of contract is not fatally defective, and all elements of a contract claim have been pleaded.

### 2. Detrimental Reliance Claim.

¶19    Plaintiffs allege that they provided the construction services, that Defendants, including Lamar, "benefitted from the Plaintiffs' performance on tasks related to the STEP Program," and the "Plaintiffs detrimentally relied upon Defendants, jointly and severally, to tender payment upon the complete satisfaction of their contractual services."[45] The Supreme Court of the Virgin Islands recently clarified the elements for promissory estoppel (detrimental reliance is an element of this cause of action).

> We agree with this analysis and thus recognize a cause of action under the promissory estoppel theory when a plaintiff proves the following three elements: "(1) the promisor made a promise that he should have reasonably expected to induce action; (2) the promisee took action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise."[46]

¶20    However, Lamar argues that no contract exists between Lamar and the Plaintiffs (other than ARB), and Plaintiffs cannot establish any promise made by Lamar to Plaintiffs, and therefore, "no detrimental reliance exists" between Plaintiffs and Lamar.[47]

¶21    In contrast, Plaintiffs argue that Plaintiffs and Lamar had an implied-in-law contract (or quasi-contract) and that "a promise is not a necessary element to prevail under a theory of detrimental reliance."[48] Instead, Plaintiffs claim that it is "the unjust enrichment of the Defendant Lamar Contractors, LLC, at the expense of the Plaintiffs that gives rise to the Plaintiff's claim."[49] Defendants, including Lamar, allegedly benefitted from Plaintiffs' work, accepted, appreciated, and retained the benefit of Plaintiffs' work, and no payment to Plaintiffs in return would lead to

---

[44] V.I. R. CIV. P. 8(a)(2).

[45] First Am. Compl., ¶¶39–42.

[46] *Mosler v. Gerace*, 78 V.I. 649, 671, 2024 VI 1, ¶ 28, cert. denied, 144 S. Ct. 2526, 219 L. Ed. 2d 1203 (2024) (citing RESTATEMENT (SECOND) OF CONTRACTS § 90); *See Banco Popular de Puerto Rico v. Panzer*, No. ST-2015-CV-00056, 2021 WL 3355327, at *6 (V.I. Super. June 23, 2021) (citations omitted); *See Wheatley v. Magras*, No. ST-05-CV-548, 2012 WL 203480, at *5 (V.I. Super. Jan. 11, 2012) (citation omitted).

[47] Mem. Fact Law Supp. Def. Lamar Contractors, LLC's Mot. Dismiss, 8.

[48] Pls.' Opp'n Def. Lamar Contractors, LLC's Mot. Dismiss, 11–12.

[49] Pls.' Opp'n Def. Lamar Contractors, LLC's Mot. Dismiss, 12.

an inequitable result.

¶22    This Court will treat Plaintiffs' "detrimental reliance" claim as a claim for promissory estoppel. Plaintiffs already allege Quantum Meruit in Count III, so Count II most closely resembles promissory estoppel, of which detrimental reliance is a component. Promissory estoppel as an alternative requires a showing of a promise, and the Plaintiffs are incorrect to state that a promise is not a necessary element. Consequently, Plaintiffs have not made a short and plain statement that Plaintiffs are entitled to relief based upon "detrimental reliance" that gives Lamar fair notice of what the claim is and the grounds upon which it rests.[50]   Therefore,  Lamar's Motion to Dismiss will be granted with respect to Count II for Detrimental Reliance as to Plaintiffs David Harvey, Cory Allison, Wesley Miller, Bobby Grissom and Zachery West.

### 3. Quantum Meruit Claim.

¶23    Lastly, Plaintiffs allege that Defendants, including Lamar, have been unjustly enriched when Defendants did not pay Plaintiffs the owed amount after Plaintiffs performed the services and benefitted Defendants.[51] "A cause of action for quantum meruit, also known as unjust enrichment, will ordinarily lie in a case where the defendant 'receive[s] something of value to which he is not entitled and which he should restore' to the plaintiff."[52] Lamar cites the outdated three-element test in *Martin v. Martin*[53] for the claim of unjust enrichment. In 2014, the Supreme Court of the Virgin Islands outlined a new test with an additional factor.

> Thus, we reformulate the elements of the unjust enrichment cause of action to require the plaintiff to prove (1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff.[54]

¶24    Lamar argues that it neither had an agreement nor owed a duty to Plaintiffs, and that the Plaintiffs "make no showing that Lamar was enriched" at Plaintiffs' expense.[55] Lamar maintains that while another party might have been enriched, Lamar is not that party. In contrast, Plaintiffs argue that due to Lamar's and Flatline's subcontract (Subcontract 1804-6), Plaintiffs provided services, which resulted in the enrichment of Lamar. Plaintiffs claim that Lamar accepted and retained the benefits of Plaintiffs' labor without paying Plaintiffs and that Lamar's enrichment was

---

[50] *Bank of Nova Scotia*, 2018 WL 745958, at *6.
[51] First Am. Compl., ¶¶44–48.
[52] *Walters v. Walters*, 60 V.I. 768, 776 (2014) (citations omitted).
[53] *Martin v. Martin*, 54 V.I. 379 (2010).
[54] *Walters*, 60 V.I. at 779–80.
[55] Mem. Fact Law Supp. Def. Lamar Contractors, LLC's Mot. Dismiss, 9.

unjust and inequitable.

¶25    Plaintiffs' claim of Quantum Meruit in the Complaint can reasonably be read to support a claim for relief and it is not fatally defective. Plaintiffs allege that Lamar willingly entered into Subcontract 1804-6 with Flatline, which resulted in Plaintiffs providing services and enriching Lamar at Plaintiffs' expense. Contrary to Lamar's arguments, Plaintiffs do not have to prove that Lamar was enriched by Plaintiffs' work at this stage. As such, this Court will deny Lamar's 12(b)(6) motion as it pertains to this claim.

### 4. Personal Jurisdiction.

¶26    Pursuant to Virgin Islands Rules of Civil Procedure 12(b)(2), Lamar claims that Plaintiffs have not demonstrated that this Court has personal jurisdiction because the Plaintiffs have allegedly failed to meet the requirements of the long arm statute and there exists a violation of due process.

### a)    Virgin Islands Long Arm Statute.

¶27    This Court has previously outlined the analysis regarding the long arm statute:

> In evaluating whether the long arm statute is satisfied, "the correct procedure is for a court to determine (1) whether the defendant's contacts meet one of categories under section 4903(a) and then (2) whether the plaintiff's claim 'arises from' that contact[,]" which in turn requires "a prima facie showing for each ... claim[ ] that (1) one of [the defendant's] contacts with the Virgin Islands is a but-for cause of that claim; and (2) that the obligations and privileges that accompany that contact with the Virgin Islands are closely related to the cause of action." In conducting this analysis, each claim "must be separately analyzed[,]" though "certain factually overlapping claims" may be considered together when "based on the same factual predicate[.]"[56]

Plaintiffs specifically cite 5 V.I.C. § 4903(a)(1)-(3) as the basis of personal jurisdiction, which states:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
> (1) transacting any business in this territory;
> (2) contracting to supply services or things in this territory;
> (3) causing tortious injury by an act or omission in this territory;
>
> ...

---

[56] *Takata Corp.*, 67 V.I. at 340 (citations omitted).

(b) When jurisdiction over a person is based solely upon this section, only a claim
for relief arising from acts enumerated in this section may be asserted against him.[57]

¶28    "According to section 4903(a)(1), even one single act amounting to a 'transaction of business' in the Territory may suffice as the basis for personal jurisdiction. The conduct need not rise to the level of 'doing business,' but must be more than an inconsequential act."[58] Similarly, the Supreme Court of the Virgin Islands has held "that the phrase 'transacting any business in this territory' is 'a term of art' which does not require that a defendant participate in business or commercial activities but only that 'a defendant engage in some type of purposeful activity within the territory.'"[59]

¶29    The Supreme Court has also clarified the analysis for section 4903(a)(2). "All that is required to satisfy section 4903(a)(2) is that a 'contract be performed, at least in part, in the Virgin Islands and that the cause of action arise out of the contract.' If a defendant knows that the ultimate destination of its goods will be the Virgin Islands, that is sufficient to find that the contract is performed, at least in part, in the Virgin Islands."[60]

¶30    Additionally, for section 4903(a)(3), this Court has previously drawn upon a framework from the Third Circuit. "The United States Court of Appeals for the Third Circuit, sitting as the former *de facto* court of last resort for the Virgin Islands, explained that "[t]he thrust of section 4903(a)(3) is directed to obtaining jurisdiction over those persons or entities who make a foray, even a single or isolated foray, into a jurisdiction and injury is caused as a result of that foray. The classic example is that of the non-resident motorist who has caused injury."[61]

¶31    Here, Lamar argues that Plaintiffs have made no allegations of fact in their First Amended Complaint to support personal jurisdiction over Lamar.[62] Lamar claims that Plaintiffs have merely alleged that Lamar entered into subcontracts, including being subcontracted by AECOM to participate in the STEP program for hurricane repair work in the Virgin Islands.

¶32    With respect to section 4903(a)(1), the Plaintiffs argue that Lamar conducted business in the U.S. Virgin Islands and acted voluntarily as a subcontractor of prime contractor AECOM in VIHFA's Emergency Home Repairs Virgin Islands Program, which provided free repairs to owner-occupied homes in the Virgin Islands that were damaged during the 2017 hurricanes.[63] The Court finds that purposeful entering into subcontracts geared toward construction in the U.S. Virgin Islands is sufficient to satisfy section 4903(a)(1). Lamar's contacts meet section 4903(a)(1), and Plaintiffs claims arise out of these contacts. The subcontracts between AECOM and Lamar

---

[57] 5 V.I.C. § 4903.

[58] *Jeffrey Epstein v. Fancelli Paneling, Inc.*, 55 V.I. 150, 161 (V.I. Super. 2011), on reconsideration sub nom. *Epstein v. Fancelli Paneling, Inc.*, No. ST-10-CV-443, 2012 WL 13220157 (V.I. Super. Mar. 13, 2012).

[59] *Evans-Freke v. Evans-Freke*, 75 V.I. 407, 416, 2021 VI 25, ¶ 13 (2021).

[60] *Fancelli Paneling*, 55 V.I. at 161–62 (citations omitted).

[61] *Erbey Holding Corp. v. BlackRock Fin. Mgmt., Inc.*, 78 V.I. 206, 275–76, 2023 VI SUPER 75, ¶ 35 (Super. Ct. 2023) (citing *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1060 (3d Cir. 1982)).

[62] Mem. Fact Law Supp. Def. Lamar Contractors, LLC's Mot. Dismiss, 5.

[63] Pls.' Opp'n Def. Lamar Contractors, LLC's Mot. Dismiss, 5–6.

and then Flatline and Lamar are allegedly but-for causes of Plaintiffs' claims, and the substantive obligations and privileges that accompany Lamar's contacts are also closely related to the action. Plaintiffs would not have performed these alleged unpaid services if it were not for the actions of Lamar.

¶33    With respect to section 4903(a)(2), Plaintiffs allege that Lamar contracted with AECOM and Flatline, and Flatline directly contracted with Plaintiffs. Flatline then contracted with Plaintiffs to perform construction-related work. "Contracting to supply services or things in this territory, for the purposes of section 4903(a)(2), has been interpreted to include contracts entered into, or partially performed in, the Virgin Islands so long as the claim arises from the contract."[64] The Court finds that Plaintiffs have sufficiently alleged that Lamar entered written subcontracts designed to support (and provide payment) and further the Emergency Home Repairs Virgin Islands Program for construction work in the Virgin Islands. Lamar's contacts meet section 4903(a)(2), and Plaintiffs' claims similarly arise from these contacts. The obligations from these contacts are closely related to Plaintiffs' claims, and allegedly, but for Lamar's subcontracts to support and arrange the construction work to be performed in the Virgin Islands, Plaintiffs would not have been contracted and thus would not have suffered the alleged damages.

¶34    Lastly, Plaintiffs also cite 4903(a)(3). Plaintiffs have alleged they completed the work orders issued under the subcontract between Lamar and Flatline (Subcontract No. 1804-6), and Lamar's acceptance of these work orders created a duty of Lamar to compensate the Plaintiffs for their services and that Lamar has breached this duty to the damage of the Plaintiffs.[65] Plaintiffs claim that Lamar was unjustly enriched because Lamar was an implicit party in Plaintiffs work under Subcontract 1804-6.[66] The Court finds that Lamar allegedly failing to pay the Plaintiffs for Plaintiffs' contracted work in the Virgin Islands would then qualify as an omission by Lamar under section 4903(a)(3). Lamar's contacts meet section 4903(a)(3), and Plaintiffs claims have arisen from these contacts as Lamar's contacts are related to the claims and allegedly caused the claims. Based upon the foregoing, the Court finds that the Plaintiffs have satisfied the requirements for personal jurisdiction under the long arm statute. The Court now turns to the due process analysis.

### b) No Due Process Violations.

¶35    The Virgin Islands Supreme Court has adopted a three-part test for assessing personal jurisdiction.

> First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities.

---

[64] *Molloy v. Indep. Blue Cross*, 56 V.I. 155, 178 (2012).
[65] Pls.' Opp'n Def. Lamar Contractors, LLC's Mot. Dismiss, 9.
[66] Pls.' Opp'n Def. Lamar Contractors, LLC's Mot. Dismiss, 15.

And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.[67]

¶36　The United States Supreme Court has also rendered several decisions that narrowed specific jurisdiction since *Molloy*.[68] For a nonresident defendant, the defendant "must have sufficient contacts with the forum," and these "contacts must be the defendant's own choice and not random, isolated, or fortuitous."[69]

¶37　Lamar argues that it lacks minimum contacts with the Virgin Islands and the exercise of personal jurisdiction by this Court would offend traditional notions of fair play and substantial justice. First, Lamar claims it merely entered into subcontracts and does not have sufficient contacts with the Virgin Islands. For instance, Lamar is based in Louisiana, and it subcontracted with AECOM (based in Puerto Rico) and Flatline (based in Louisiana). It supposedly did not specifically subcontract with an entity based in the Virgin Islands. Lamar also cites *Farino* from the Third Circuit in which the court stated that "[t]he fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident."[70]

¶38　In response, Plaintiffs cite *Godfrey* where the District Court of the Virgin Islands held that the long arm statute, pursuant to 5 V.I.C. § 4903(a)(1) and (2), was satisfied and that sufficient minimum contacts existed for personal jurisdiction over a non-resident corporation that contracted to provide moving services for Plaintiff where the services were partly completed in the Virgin Islands.[71] It stated, "[a]lthough the defendant did not have any systematic or continuous links with the Virgin Islands, the defendant purposefully availed itself of the privilege of conducting a business transaction in the Virgin Islands, *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The defendant voluntarily agreed to provide a service to Virgin Islands residents and made the necessary arrangements to have that service rendered in exchange for a sum of money."[72]

¶39　Here, as Plaintiffs allege, Lamar voluntarily participated as a subcontractor of prime contractor AECOM in a program that was specifically designed to support relief and repair efforts in the Virgin Islands after the 2017 hurricanes. For instance, Plaintiffs allege that Flatline "was subcontracted by Lamar to perform the construction related work relative to AECOM's prime

---

[67] *Molloy v. Indep. Blue Cross*, 56 V.I. 155, 183 (2012) (quotation marks, brackets, and citations omitted).
[68] *Erbey Holding Corp.*, 78 V.I. at 320.
[69] *Id.* at 320–21 (citations and internal quotations omitted).
[70] *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).
[71] Pls.' Opp'n Def. Lamar Contractors, LLC's Mot. Dismiss, 5; *Godfrey v. Int'l Moving Consultants, Inc.*, No. CIV. 79-188, 1980 WL 626401 (D.V.I. Dec. 12, 1980).
[72] *Godfrey*, No. CIV. 79-188, 1980 WL 626401, at *6.

contract with VIHFA in the U S Virgin Islands."[73] Lamar willingly entered into this Virgin Islands program (administered by the VIHFA) for work to be performed in the Virgin Islands and purposefully directed its activity at the Virgin Islands. This litigation also arises out of that activity. Consequently, Lamar has at least certain minimum contacts with the Virgin Islands.[74]

¶40　Second, Lamar cites *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, a Third Circuit case, and argues that exercising personal jurisdiction would not comport with fair play and substantial justice.

> That is, even if a defendant has the requisite minimum contacts with the forum state, other factors may militate against exercising jurisdiction. These "fairness factors" include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."[75]

¶41　Here, neither Lamar nor the Plaintiffs extensively elaborate on the application of these fairness factors other than concluding that they weigh in their own favor. The first factor favors Lamar as it would likely be burdened by having to defend itself in the Virgin Islands when based in Louisiana. However, the Court finds that the remaining factors favor the Plaintiffs. The construction work occurred in the Virgin Islands and the case is centered around the Virgin Islands. Plaintiffs have a significant interest in obtaining convenient and effective relief by centralizing their claims into this one case (with the exception of ARB). The judicial system also has a similar interest in an efficient resolution. As such, the Court finds that Plaintiffs have established a prima facie case that the exercise of specific personal jurisdiction would comport with due process.

### 5. Venue.

¶42　Lamar also raises the defense of venue. However, without ARB's claims against Lamar, there are no issues concerning venue. This civil action has been initiated in the judicial division where the cause of action arose.[76]

## IV.　CONCLUSION

¶43　ARB had a separate contract with Lamar with a forum selection clause directing litigation to Louisiana. In this specific case, ARB's claims against Lamar will be dismissed. Additionally,

---

[73] First Am. Compl., ¶12.
[74] *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).
[75] *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 205–06 (3d Cir. 1998) (citations omitted).
[76] V.I. R. Civ. P. 12(b)(3)(a).

Lamar's Motion to Dismiss for the remaining Plaintiffs' Count II (Detrimental Reliance) will be granted pursuant to 12(b)(6). Plaintiffs have not alleged that Lamar made a promise to Plaintiffs, and they claim that a promise is not needed for the claim. But a promise is an essential element for Count II. Lamar's Motion to Dismiss regarding Counts I and III will be denied. Venue is also proper, and Plaintiffs have sufficiently met their burden to demonstrate a prima facie case for exercising personal jurisdiction over Lamar.

Accordingly, it is hereby

**ORDERED** that Defendant Lamar Contractors, LLC's Motion to Dismiss, filed October 29, 2019, is **GRANTED with respect to the claims brought against it by Plaintiff Ashley Robinson Builders, LLC**, and the claims of Plaintiff Ashley Robinson Builders, LLC's brought against Lamar Contractors, LLC is the above-captioned action are **DISMISSED**;

**ORDERED** that Defendant Lamar Contractors, LLC's Motion to Dismiss, filed October 29, 2019, is **GRANTED with respect to the claim for Detrimental Reliance brought by Plaintiffs David Harvey, Cory Allison, Wesley Miller, Bobby Grissom and Zachery West, and their claim for Detrimental Reliance as set forth in Count III is DISMISSED**; and it is further

**ORDERED** that Defendant Lamar Contractors, LLC's Motion to Dismiss, filed October 29, 2019, is **DENIED** with respect to Count I (Breach of Contract) and Count III (Quantum Meruit) brought by Plaintiffs David Harvey, Cory Allison, Wesley Miller, Bobby Grissom and Zachery West; and it is further

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to Attorneys Clive C. Rivers, Michelle T. Meade, Scot F. McChain, Nycole A. Thompson, Douglas B. Chanco and Earnesta Taylor.

DATED: 4|11|25

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY:
**LATOYA CAMACHO**
Court Clerk Supervisor  04 / 11 / 2025